**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| P. DAVID NEWSOME, JR., LIQUIDATING TRUSTEE OF MAHALO ENERGY (USA), INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 11-CV-140-GKF-PJC |
| WILLIAM GALLACHER, DUNCAN CHISHOLM, GARY H. DUNDAS, JEFF G. LAWSON, JAMES BURNS, KEVIN WOLFE, DAVID E. BUTLER and BURNET, DUCKWORTH AND PALMER, LLP, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**OPINION AND ORDER**

Before the court are the Motion to Dismiss of defendants William Gallacher, Duncan Chisholm, Gary H. Dundas, Jeff. G. Lawson, James Burns, Kevin Wolfe and David E. Butler (the "Individual Defendants") [Dkt. #18] and the Motion to Dismiss of defendants Jeff G. Lawson and Burnet, Duckworth and Palmer, LLP [Dkt. #19]. Both motions are based on Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted.

This lawsuit arises from the financial collapse of Mahalo Energy (USA) ("Mahalo USA"), a Delaware corporation, and its parent, Mahalo Energy Ltd. ("Parent"), a Canadian company located in Alberta, Canada. The individual defendants are Canadian citizens and residents of Alberta who were officers and/or directors of Mahalo USA and/or the Parent.

Burnet, Duckworth & Palmer, LLP ("BDP") is a Canadian law firm that performed legal services for the Parent and—allegedly—for Mahalo USA as well.

In May 2009, Mahalo USA filed a Chapter 11 bankruptcy petition in the United States District Court for the Eastern District of Oklahoma. Plaintiff, the liquidating trustee and successor-in-interest to the claims of the reorganized debtor, Mahalo USA, asserts claims against defendants for breach of fiduciary duty and aiding and abetting breach of fiduciary duty.

The Complaint breaks the defendants into four groups:

1. **The Mahalo USA Defendants**—William Gallacher, Duncan Chisholm, Gary H. Dundas and James Burns—who were all officers or directors of Mahalo USA;

2. **Gallacher**, who plaintiff alleges had complete dominion and control over the Mahalo USA Defendants and, therefore, over Mahalo USA itself.;

3. **The Parent Defendants**—Gallacher, Jeff G. Lawson, Kevin Wolfe and David E. Butler—who were officers or directors of the Parent; and

4. **The Attorney Defendants**—BDP and Lawson, a former partner of BDP.

The Trustee alleges that all defendants except the law firm held a financial interest in the Parent and placed that financial interest over the best interests of Mahalo USA and its creditors, to whom it owed fiduciary duties of due care, loyalty and good faith. He asserts BDP and Lawson breached their fiduciary duty to Mahalo USA and/or aided and abetted these acts by failing, in the course of performing legal services, to protect its interests.

The Mahalo USA Defendants, Gallacher and the Parent Defendants have moved for dismissal, arguing the court lacks personal jurisdiction over them and asserting the Trustee has failed to state a cognizable claim against them. Likewise, the Attorney Defendants seek dismissal for lack of personal jurisdiction and failure to state a claim. All defendants have

submitted declarations in support of their motions, and the Trustee has submitted declarations attaching various documents produced during discovery in the bankruptcy action. Additionally, the court has taken judicial notice of documents filed or entered in the bankruptcy action. *See* Dkt. ## 27, 38 and 53.

## I. Facts

### A. Allegations of the Complaint

The Trustee alleges that beginning in January 2006 and continuing until Mahalo USA filed Chapter 11 bankruptcy in May 2009, defendants left Mahalo USA undercapitalized and caused it to incur substantial intercompany debts to the Parent; caused the Parent to pay a grossly inflated price to acquire a business in which defendants had an ownership interest, then transferred the debt obligation to Mahalo USA; caused Mahalo USA to enter into a predatory financing transaction with Ableco Finance, LLC, a known "loan-to-own" lender; caused Mahalo USA to enter into an amendment to the financing transaction which added $15 million in additional debt, including a $10 million loan fee, and required repayment in three months; and sold Mahalo USA to an affiliate of the Parent for inadequate consideration. [Dkt. #2, Complaint, ¶¶4-8]. Mahalo USA was forced to file for bankruptcy protection, and under the plan confirmed in Mahalo USA's bankruptcy case, Ableco gained ownership of the company's assets. [*Id.*, ¶8].

The Trustee claims the breaches of fiduciary duty occurred while Mahalo USA was insolvent or "in the zone of insolvency." Therefore, the Mahalo USA Defendants owed fiduciary duties of due care, loyalty and good faith to Mahalo USA and, derivatively, to its creditors. [*Id.,* ¶10]. The Trustee alleges each of the Mahalo USA Defendants breached their fiduciary duties by acting solely in the interest of the Parent and its shareholders, failing to investigate the financial condition of Mahalo USA, and viewing Mahalo USA as a mere "field office" of the

Parent. [*Id*., ¶11]. The Complaint states, "The affairs of Mahalo USA were run from Canada with little or no deliberation or investigation into the requirements for the actions taken by or on behalf of the Company under U.S. law or policy." [*Id*.].

The Trustee alleges the Mahalo USA Defendants were "hopelessly conflicted, being motivated by their desire to increase their personal equity stakes in Parent and to maintain their positions of employment by Parent and Gallacher." [*Id.,* ¶12], Therefore, they permitted defendant directors and officers of the Parent to direct the affairs of Mahalo USA for the Parent's sole benefit and to take excessive risks in connection with the affairs of Mahalo USA, which damaged Mahalo USA and its creditors. [*Id*.]. Gallacher possessed complete dominion and control of Mahalo USA as a result of his control over the Mahalo USA Defendant, and breached his fiduciary duty to Mahalo USA. [*Id.,* ¶13]. The Parent Defendants and the Attorney Defendants "aided and abetted" breaches of fiduciary duty to Mahalo USA by the Mahalo USA Defendants and by Gallacher. [*Id.,* ¶14]. As a result, Mahalo USA experienced a liquidity crisis and was forced to file bankruptcy, substantially diminishing the enterprise value of Mahalo USA and damaging the company and its creditors. [*Id.,* ¶15].

The Trustee alleges the court has subject matter jurisdiction of the case under 28 U.S. § 1332(a)(2) (diversity). He asserts the court has personal jurisdiction over each defendant, "in that each of them have purposefully engaged in activity within the State of Oklahoma and otherwise established minimum contacts within the State of Oklahoma by virtue of their breaches of fiduciary duty to Mahalo USA and/or aiding and abetting of such breaches." [*Id.,* ¶17]. Further, "Defendants' contacts with the State of Oklahoma are both directly related to the claims in this Complaint and were purposeful," and "each of the Defendants' contacts with the State of Oklahoma was substantial, systematic, and continuous at all times relevant to the

Complaint." [*Id.*]. The Trustee alleges, "This action is not a collusive one designed to confer jurisdiction upon a court of the United States that it would not otherwise have." [*Id.,* ¶18]. He asserts venue is proper under 28 U.S.C. § 1391(a) "because a substantial portion of transactions and wrongs complained of herein occurred in this district" and "Defendants maintained executive offices in this district and have received substantial compensation in this district by engaging in numerous activities and conducting business in this district," and Mahalo USA maintained its principal place of business in this district. [*Id.,* ¶19].

### 1. Mahalo USA

Mahalo USA is a Delaware corporation and was the wholly-owned subsidiary of Parent, a Canadian company that was publicly traded on the Toronto Stock Exchange. [*Id.* at 22]. Mahalo USA was an unconventional natural gas producer, focused principally on the acquisition, exploration, development and production of coal bed methane ("CBM") and shale gas prospects in the United States. In the spring of 2008, Mahalo USA began to focus exclusively on CBM exploration and development efforts in the Hartshorne and McAlester coal formations in Oklahoma. By May 2008, the Company's shale gas exploration and development efforts were restricted to Oklahoma and were focused on Caney and Woodford shale in McIntosh and Pittsburgh Counties. [*Id.,* ¶22]. Mahalo USA filed a voluntary petition in bankruptcy on May 21, 2009, in the United States District Court for the Eastern District of Oklahoma. [*Id.,* ¶¶20, 23]. On April 26, 2010, Mahalo USA, as debtor in possession, confirmed a liquidating plan of reorganization pursuant to which, among other things, certain assets, including the "Designated Avoidance Actions," were to be administered and liquidated for the benefit of creditors by plaintiff in his capacity as the Liquidating Trustee. [*Id.,* ¶23].

Pursuant to the Plan, a Liquidating Trust was established for the benefit of the holders of allowed general unsecured claims against Mahalo USA. [Bankruptcy Case No. 09-80795, U.S. Dist. Court, E.D. Oklahoma, Dkt. #1298-1].[1] The Trustee of the Liquidating Trust was authorized to, among other things, "prosecute, compromise, settle and/or abandon the Designated Avoidance Actions, in his/her reasonable discretion, for the benefit of the holders of the Allowed General Unsecured Claims." [*Id.,* Ex. 1, § V(E)(2)(i). The Plan defines Designated Avoidance Actions to include:

> (ii) all claims, causes of action, and rights of action, at law or equity that may be asserted on behalf of the Estate against any of the Debtor's ad/or the Parent's current or former directors and/or officers, and Burnet Duckworth & Palmer LLP, arising from any act or omission occurring before the Petition Date, other than those related to the filing and prosecution of the Case.

[*Id.,* § I(A).

## 2. Mahalo Energy Ltd.

Mahalo Energy Ltd. was incorporated under Canadian law on April 21, 2004. Its head office was located in Calgary, Alberta, Canada. Parent was engaged in the exploration for, and the acquisition, development and production of unconventional natural gas, principally CBM and shale gas. On July 29, 2005, the Parent completed an initial public offering at $4.50 per share for gross proceeds of $55.4 million, trading on the Toronto Stock Exchange. By December 31, 2008, the parent had sold a majority of its Canadian resource assets. The Parent's common stock was voluntarily agreed by Parent to be delisted from the Toronto Stock Exchange on May 1, 2009, due to its inability to meet the listing requirements. On May 21, 2009, the Parent filed for relief under the Companies' Creditors Arrangement Act under Canadian law. [*Id.,* ¶24].

---

[1] *See* Dkt. #27, Exhibit "A."

### 3. Individual Defendants

### a. William Gallacher

The Complaint alleges Gallacher is domiciled in Alberta, Canada. He was Chairman of the Board of Directors of Parent and a member of the Compensation Committee of Parent's Board. "Upon information and belief, Defendant Gallacher dominated and controlled the board of Parent." [*Id.,* ¶26]. Gallacher had "a material financial interest in Parent, owning at least 10 percent of Parent's outstanding shares and controlling another 9.19 percent of Parent's shares through an affiliate of parent that he owned and controlled, Avenir Capital Corporation." [*Id.,* ¶27]. Gallacher dominated and controlled the operations of Mahalo, USA and personally directed all of its affairs by virtue of his control over the sole board member and the officers of Mahalo USA. [*Id.,* ¶28]. Gallacher held a material financial interest and also served as President, CEO and Chairman of the Board of Avenir Diversified Income Trust, which wholly owned Avenir Operating Corporation. Additionally, Gallacher was the owner and Managing Director of Avenir Capital Corporation, which owned approximately 9.19 percent of Parent. The Complaint referenced Avenir Capital Corporation, Avenir Operating Corporation, Avenir Diversified Income trust and related subsidiaries or companies as "Avenir." [*Id.,* ¶29].

### b. Duncan Chisholm

Defendant Duncan Chisholm is domiciled in Alberta, Canada. Until his resignation in October 2008, Chisholm served as an officer of Mahalo USA, holding the positions of President and Chief Executive Officer. [*Id.,* ¶30]. Simultaneously, Chisholm served as an officer of Parent, holding the positions of President and CEO of the Parent until his resignation in October 2008. [*Id.,* ¶31]. He was also a member of Parent's Board of Directors and served on Parent's Board's Compensation Committee until his resignation in October 2008. [*Id.,* ¶32]. Upon

information and belief, Chisholm owned approximately 3.32 percent of Parent's outstanding

shares. He resigned his positions in both Mahalo USA and Parent on October 14, 2008, but

remained a paid consultant to Parent until December 2009.

### c. Gary Dundas

Defendant Gary Dundas is domiciled in Alberta, Canada. [*Id.,* ¶35]. Dundas served as

the sole director of Mahalo USA. Upon information and belief, Dundas has been the only

director of Mahalo USA since its inception. Dundas, who lived and worked in Canada, exercised

no independent oversight for the Company. No meetings of the board of Mahalo USA were ever

held, nor do any board meeting minutes or meeting agendas exist. Dundas breached his

fiduciary duties as a director of Mahalo USA by abdicating his responsibilities and instead

allowing Gallacher and Parent Defendants to direct the affairs of Mahalo USA, "taking it on a

patch of excessive risk, towards the goal of enhancing Dundas' and the other Defendants' equity

interests in the Parent." [*Id.,* ¶36]. Dundas was a member of the Board of Directors of parent

and served as a member of Parent's Audit Committee and Corporate Governance Committee.

[*Id.,* ¶37]. At all times when Mahalo USA was insolvent or in the zone of insolvency, Dundas

had a conflict of interest in connection with his dual roles as a member of the board of Parent

(pursuant to which he owed his loyalties to Parent and its shareholders) and was sole director of

Mahalo USA (pursuant to which he owned his loyalties to Mahalo USA and its creditors). "At

all times when Mahalo USA was insolvent or in the zone of insolvency, the interests of these two

constituencies were irreconcilably conflicted." [*Id.,* ¶38]. Dundas owned approximately 4.3

percent of the outstanding shares in Parent, and was employed by Gallacher, who exercised

control over Dundas' decisions in connection with Mahalo USA. Dundas was motivated to act

not in the best interests of Mahalo USA, but rather in the best interest of Parent and his

employer, Gallacher.  In so doing, Dundas used Mahalo USA as a mere instrumentality for purposes of maximizing his own personal equity interests along with those of Gallacher and the other defendants.  [*Id.,* ¶39].  Dundas was the co-founder of Avenir Diversified Income Trust and was Vice President of Finance and CFO of Avenir Diversified Income Trust and served on Avenir's board of directors.  [*Id.,* ¶40].

### d. Jeff Lawson

Defendant Jeff Lawson is domiciled in Alberta, Canada.  [*Id.,* ¶41].  He was a member of the Parent's Board of Directors and of Parent's Compensation Committee.  [*Id.,* ¶42].  He was a partner and member of the Executive Committee of BDP, which provided legal services to Parent, until 2008, when he resigned to accept a position at Blackmont Capital in Toronto, Canada.  Until January 19, 2009, there was an attorney-client relationship between Lawson and Mahalo USA and a simultaneous attorney-client relationship between Lawson and Parent.  Upon information and belief, during the same time there was a simultaneous attorney-client relationship between Lawson and Avenir.  [*Id.,* ¶43].  Lawson held an 0.3 percent equity interest in Parent.  [*Id.,* ¶44].  Upon information and belief, Lawson further served as the corporate secretary of Avenir Diversified Income Trust and held a material financial interest in Avenir.  [*Id.,* ¶45].

### e. James Burns

Defendant James Burns is domiciled in Alberta, Canada.  [*Id.,* ¶46].  From October 2008 until his resignation in June 2009, Burns served as Mahalo USA's President and CEO.  [*Id.,* ¶47].  During the same time he served as Parent's President and CEO and was a member of parent's board of directors.  [*Id.,* ¶48].  Burns owned .04 percent of Parent's shares.  [*Id.,* ¶49].  He was also Chief Operating Officer of Energy of Avenir Diversified Income Trust.  [*Id.,* ¶50].

### f. Kevin Wolfe

Defendant Kevin Wolfe is domiciled in Alberta, Canada.  [*Id.*, ¶51].  Until July 2009, he was a member of Parent's Board of Directors, its Audit Committee and its Corporate Governance Committee.  He resigned his positions from the Parent's board in July 2009.  [*Id.*, ¶52].  Wolfe owned .04 percent of Parent's shares.  [*Id.*, ¶53].

### g. David Butler

Defendant David Butler is domiciled in Alberta, Canada.  [*Id.*, ¶54].  He served as a member of Parent's board of directors until his resignation in July 2009, and owned approximately .29 percent of Parent's shares.  [*Id.*, ¶¶54-55].  He served on the board of Avenir Diversified Income Trust and is a member of Avenir's Audit Committee and Reserves Committee.  [*Id.*, ¶57].

### 4. Burnet Duckworth & Palmer, LLP

Defendant Burnet Duckworth & Palmer, LLP, is a Canadian-based law firm that provided legal services to both Parent and the Company.  BDP had represented Parent for many years and worked closely with the Mahalo USA Defendants and the Parent Defendants.  The Complaint alleges at all relevant times, there was an attorney-client relationship between BDP and Mahalo USA and a simultaneous attorney-client relationship between BDP and Parent.  Upon information and belief, there was also a simultaneous attorney-client relationship between BDP and Avenir. [*Id.*, ¶58].  The Trustee alleges BDP advised the Parent on the acquisition of Peregrine Energy Ltd., a company in which several defendants, including Lawson held an ownership interest.  [*Id.*, ¶¶75-76].  He asserts the Parent "severely overpaid" for the acquisition.  [*Id.*, ¶78].  BDP advised Parent on the Peregrine Acquisition while Lawson, a partner at BDP, sat on the boards of both Parent and Peregrine and had ownership interests in both.  [*Id.*, ¶76].  BDP

received legal fees of approximately $500,000 in 2006 relating to "general and administrative expense and Peregrine transaction costs." [*Id.*].

In his Fourth Cause of Action, the Trustee asserts a claim for "breach of fiduciary duties" against BDP and Lawson, alleging the Attorney Defendants owed a fiduciary duty to Mahalo USA and breached that duty by "aligning their personal financial interest with another client's success, where the impact of this on Mahalo USA was material and adverse." [*Id.,* ¶¶214].

In his Fifth Cause of Action, the Trustee asserts an alternative claim against BDP for "aiding and abetting breach of fiduciary duties. [*Id.,* ¶224]. He contends that if BDP is found not to have owed a fiduciary duty to Mahalo USA, it is liable to "substantially and knowingly participating in, inducing, encouraging, substantially assisting, and/or aiding or abetting the breaches of fiduciary duty committed by the Mahalo USA Defendants and/or Gallacher. [*Id.*]. He alleges BDP advised the Mahalo USA Defendants and Gallacher in connection with each of the Ableco Transaction, the Ableco Amendment and the Intercompany Debt Transactions, "to the detriment of Mahalo USA and its creditors." [*Id.*].

## B. Defendants' Declarations

The individual defendants and BDP have filed declarations in support of the motions to dismiss. [Dkt. #18, Exs. B-H; Dkt. #19, Exs. 1-2]. All reside in Alberta, Canada. None of the individual defendants have ever resided in Oklahoma; owned, leased, controlled or acquired any real property in the state; hired or procured an agent to search for any real property in the state for his use; filed a lawsuit in the state; maintained any financial accounts, employees, offices or agents in the state; or registered to do business or obtained any professional license to do business within the state.

### 1. Gallacher

Gallacher has been to Oklahoma on two occasions, both times in a representative capacity as a director, officer or employee of a company. [Dkt. #18, Ex. C, William Gallacher Dec., ¶4]. As an employee of Dowell Schlumberger ("Dowell") in Canada, he was required to receive training in Oklahoma for approximately three months in the summer of 1987. [*Id.*].

On one occasion in 2005, in his capacity as Chairman of the Board of the Parent, Gallacher traveled to Oklahoma with a group of Canadian analysts and investment dealers on an overnight trip. The purpose of the trip was to familiarize the analysts and investment dealers with Mahalo USA's Oklahoma operations in anticipation of their efforts to market stock of the Parent to Canadian investors. [*Id.*]. Both business trips were undertaken exclusively on behalf of, and for the benefit of, the respective corporations with which he was associated at the time. [*Id.,* ¶5]. Other than the 2005 trip, Gallacher did not travel to Oklahoma, negotiate or transact business in Oklahoma on behalf of Mahalo, or otherwise conduct business within the State of Oklahoma. [*Id.* at 6]. His responsibilities as Chairman of the Board of Directors of the Parent did not require him to communicate with anyone in Oklahoma. [*Id.*].

Gallacher has reviewed the allegations of the Complaint. He avers that, to the extent any facts alleged in the Complaint occurred, "any of my actions with respect to those events were taken in Canada." [*Id.,* ¶7].

### 2. Chisholm

As a general rule, Chisholm carried out his duties for Parent and Mahalo USA from his office in Canada. [Dkt. #18, Ex. H, Duncan Chisholm Affid., ¶6]. From time to time he communicated about Mahalo USA operations with people located in Oklahoma. Such communications concerned only the general operational matters of Mahalo USA. [*Id.*].

During his tenure as President and CEO of Mahalo USA, Chisholm made approximately two trips per month to Oklahoma to generally supervise the general operations of Mahalo USA in Oklahoma. [*Id*., ¶7]. Each trip was usually two or three days in length, though occasionally a trip would last for as long as five days. [¶7]. On these trips, he typically met with Mahalo USA field staff, observed pipeline routes, met with operators of properties in which Mahalo USA held and interest, and observed safety meetings at pressure station locations. [*Id.*] In 2005, Chisholm traveled to the Poteau, Oklahoma, field with several Canadian investment house representatives who wanted to witness a coal bed methane well test and tie-in. [*Id.*, ¶8].

In approximately 2004, Mahalo USA acquired an interest in a coal bed methane field near Poteau. In his capacity as president of Mahalo USA, Chisholm may have had communications with persons in Oklahoma in connection with the acquisition. [*Id.*, ¶9(a)]. In 2005, Mahalo USA acquired an interest in property near Eufaula, Oklahoma, from a company located in Denver. In his capacity as president of Mahalo USA, he attended field inspections of this property. [*Id.*, ¶9(b)]. In 2006, Mahalo USA acquired an additional interest in the coal bed methane field near Poteau. Chisholm, in his capacity as president of Mahalo USA, negotiated this purchase through telephone calls and emails with a representative of the seller located in Oklahoma and traveled to Tulsa to attend the closing. [*Id.*, ¶9(c)]. In June of 2007, a Mahalo USA technical team, of which Chisholm was a member, visited a public data room in Oklahoma City to evaluate assets for sale by a privately held company known as Jolen Energy. [*Id.*, ¶9(d)].

From December 2008 until October 2010, Chisholm served as Vice-President and Chief Operating Officer of True Energy Trust ("True Energy"), a publicly traded Canadian company. On behalf of True Energy, he traveled to Oklahoma during August 2009 to explore a possible business deal. The duration of the visit was two days and it was conducted solely on behalf of

True Energy. [*Id.,* ¶11(a)]. He is President of KIJJ Investments (US), Inc., a Canadian corporation wholly owned by KIJJ Investments, Ltd. KIJJ Investments (US) owns non-operating working interests in some oil and gas properties in Oklahoma. KIJJ Investments, Ltd., is a private company owned by family members. Chisholm owns no equity interest in the company. [*Id.,* ¶11(b).

### 3. Dundas

In his capacity as Director of Mahalo and Mahalo USA, Dundas traveled to Oklahoma in 2005 with a group of Canadian analysts and investment dealers on an overnight trip to Oklahoma. [Dkt. #18, Ex. B, Dundas Dec., ¶5]. The purpose of the trip was to familiarize the analysts and investment dealers with Mahalo USA's Oklahoma operations in anticipation of their efforts to market stock of Mahalo to Canadian investors. [*Id.,* ¶5]. Other than this trip, Dundas did not travel to Oklahoma, negotiate or transact business in Oklahoma on behalf of the Parent or Mahalo USA, other otherwise conduct any business in Oklahoma. His responsibilities as a director of the Parent and Mahalo USA did not require him to communicate with anyone in Oklahoma. [*Id.,* ¶6].

Gallacher has reviewed the allegations of the Complaint. He avers that, to the extent any facts alleged in the Complaint occurred, "any of my actions with respect to those events were taken in Canada."

### 4. Lawson

In his role as a Director of the Parent, Lawson never traveled to Oklahoma on behalf of Mahalo, negotiated or transacted any business in Oklahoma on behalf of the Parent or communicated with anyone in Oklahoma. [Dkt. #18, Ex. F., Jeff G. Lawson Dec., ¶4]. Lawson has been in Oklahoma only once, approximately 10 years ago when he traveled to Oklahoma to

meet with representatives of Devon Energy Corporation. The meeting was not related to Mahalo or the Parent. [*Id.,* ¶6].

A former attorney, Lawson was licensed to practice law in the Province of Alberta, Canada, between August 1994 and March 2009. [Dkt. #19, Ex. 1, Jeff G. Lawson Dec., ¶5]. Lawson was a partner with Burnet, Duckworth and Palmer from 1997 until September 2007. [*Id.,* ¶6]. Lawson has never owned any interest in the Mahalo USA, nor was he ever an officer or director in Mahalo USA. [*Id.,* ¶7]. He states he never advised Mahalo USA or any other person or entity in Oklahoma law or the law of the United States. [*Id.,* ¶8]. He advised the Parent on matters regarding Canadian law. [*Id.,* ¶9].

### 5. Burns

Burns was Chief Operating Officer of the Parent from April 2008 until October 2008. [Dkt. #18, Ex. G, James Burns Dec., ¶4]. From October 2008 until June 2009, he was a Director, President and CEO of the Parent. [*Id.*]. Also, from October 2008 until June 2009, he served as President and CEO of Mahalo USA. [*Id.,* ¶5].

Burns, as a general rule, carried out is duties for the Parent and Mahalo USA from his office in Canada. He did not maintain an office in Oklahoma. From time to time he communicated about Mahalo USA operations with people located in Oklahoma. However, such communications concerned only the day-to-day operations of Mahalo USA. [*Id.*, ¶6].

Burns made approximately six trips to Oklahoma in his capacity as Director and officer of Mahalo USA and/or the Parent. [*Id.,* ¶7]. Between April 2008 and August 2008, he traveled to Oklahoma four times to generally supervise the day-to-day Oklahoma operations. [*Id.,* ¶8]. During those trips, he observed the oil and gas properties in which Mahalo USA held an interest, observed the operations in the Oklahoma office, met with Mahalo USA staff and management

concerning day-to-day operations in Oklahoma. [*Id.,* ¶8(a)-(c)]. In January 2009, Burns made two trips to Oklahoma, each lasting two days, for the purpose of making presentations to potential purchasers of Mahalo USA or its assets. [*Id.,*¶9]. With the exception of these two trips, his contacts with Oklahoma were limited to the day-to-day operations of Mahalo USA, and were not in connection with the events alleged in the Complaint. [*Id.,* ¶11].

### 6. Wolfe

Wolfe has never traveled to Oklahoma for any reason. [Dkt. #18, Ex. D, Kevin Wolfe Dec., ¶3(g)]. During the time he was on the Board of Directors of the Parent, he did not negotiate or transact business in Oklahoma on behalf of the Parent, or otherwise conduct any business within the state. [*Id.,* ¶4]. His responsibilities as a director of the Parent did not require him to communicate with anyone in Oklahoma. [*Id.*].

Wolfe has reviewed the allegations of the Complaint and avers that, to the extent the facts alleged in the Complaint occurred, any of his actions with respect to those events were taken in Canada, and he had not communications with anyone in Oklahoma in connection with such actions. [*Id.,* ¶5].

### 7. Butler

Butler declares he never traveled to Oklahoma on behalf of the Parent, negotiated or conducted any business in Oklahoma on behalf of Mahalo or otherwise conducted any business within the state. [Dkt. #18, Ex. E. David E. Butler Dec., ¶4]. All of his actions with respect to events alleged in the Complaint were taken in Canada, and he had no communications with anyone in Oklahoma in connection with such actions. [*Id.,* ¶5].

From approximately 1968 to 1978, Butler made three trips to Oklahoma. One trip was to attend an anniversary party, one was to attend a land management course and one was to look at an oil property. None of the trips were related to Mahalo USA or the Parent. [*Id.,* ¶6].

### 8. Burnet, Duckworth and Palmer, LLP

No attorneys in BDP are licensed to practice law in the United States or in Oklahoma. [Dkt. #19, Ex. 2, Grant Mackenzie Dec., ¶4]. BDP is a Canadian law firm registered as a limited liability partnership in the Province of Alberta, Canada; its office and principal place of business is located in Calgary. [*Id.,* ¶5]. BDP has never owned any interest in the Parent or in Mahalo USA, or in any other entities identified in the Complaint. [*Id.,* ¶6].

BDP has an attorney/client relationship with the Parent. [*Id.,* ¶7]. In the course of its representation of the Parent, when any advice was required for any activities involving Oklahoma or United States law, counsel in the United was retained by Mahalo USA, BDP or the Parent. [*Id.,* ¶8].

Upon information and belief, Mahalo USA obtained its own counsel in the United States and Oklahoma for anything related to issues arising there, including Jim Hardwick of Hall Estill in Tulsa; Jamie Jost of Davis Graham & Stubbs LLP; Michael Stack; Greg McAffey [*sic*] of McAffey [*sic*] & Gore in Oklahoma City; Michael P. Schumaecker of Pillsbury Winthrop Shaw Pittman LLP, in New York; and Alan C. Durbin of Andrews Davis, in Oklahoma City. [*Id.,* ¶¶9-10].

MacKenzie is the only BDP attorney who has ever visited Oklahoma regarding Mahalo USA. MacKenzie attended one day in court in the bankruptcy of Mahalo USA in the U.S. Bankruptcy Court for the Eastern District of Oklahoma on February 11, 2010, as an observer for the benefit of the Canadian directors and officers. [*Id.,* ¶12].

BDP maintains no offices in Oklahoma; possesses no real estate, personalty or other property in the state; has no officers or employees in the state; has never advertised in the state; does not conduct business in the state; has no certificate of authority to do business in the state; pays no corporate or other taxes in the state; has no bank accounts in the state; has no warehouse or other place of business in the state; does not pay any business franchise or occupancy taxes in the state; and does not file any Oklahoma income tax or sales tax returns. [*Id.,* ¶¶13-23].

### C. Plaintiff's Declarations

The Trustee's attorneys, Joshua D. Wells and William B. Federman, submitted Declarations attaching a total of 102 exhibits. [Dkt. #25, Federman Dec.; Dkt. #26, Wells Dec.; Dkt. #40, Wells Supplemental Dec., Dkt. #41, Wells Supplemental Dec.; Dkt. #49, Wells Dec.]. The exhibits are documents and excerpts of depositions taken during discovery in the Mahalo, USA bankruptcy proceeding. [*Id.*]. The documents relate, in general, to the involvement of defendants in conducting the business of Mahalo USA and the Parent.

Defendants moved to strike the declarations of attorneys Federman and Wells. *See* Dkt. #33. For the reasons set forth in the court's Opinion and Order [Dkt. #54], the court struck the attorneys' declarations. However, this court finds and concludes that, even if the declarations had not been stricken, the Motions to Dismiss should be granted for the reasons set forth in Section III, below.

The Trustee also filed two Requests for Judicial Notice of documents filed or entered in the bankruptcy proceeding (Case No. 09-80795). [Dkt. #27, #38]. The documents include the Debtor's Amended Plan of Reorganization, as Amended; the Chapter 11 Petition; the Affidavit of James Burns, President and CEO of Mahalo USA; an Oil and Gas Trust Claims Exhibit; a list of Compromised Oil and as Mechanics/Materialmen Claims; an Oil and Gas Drilling Vendor

Program Summary; Findings of Fact and Conclusion of Law Regarding Confirmation of Debtor's Amended Plan of Reorganization, as Amended, and Related Settlements and Compromises; and the Order Confirming Debtor's Amended Plan of Reorganization. [Dkt. #27, Exs. A-C; Dkt. #38, Exs. B-F]. The court granted the Trustee's Requests for Judicial Notice on March 2, 2012. [Dkt. #53].

### III. Applicable Law:  Requirements for Personal Jurisdiction

In considering a motion to dismiss pursuant to Rule 12(b)(2), a court must determine whether the plaintiff has alleged sufficient facts to establish the court's personal jurisdiction over the defendant. If jurisdiction is contested, the plaintiff bears the burden of establishing jurisdiction. *AST Sports Science, Inc., v. CLF Dist. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008). Where, as here, the question of personal jurisdiction is disputed in the preliminary stages of litigation, "the plaintiff need only make a prima facie showing of jurisdiction to defeat the motion [to dismiss]." *Id.*  The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir. 1998). The court will accept as true the allegations in plaintiff's complaint, and all factual disputes will be resolved in the plaintiff's favor. *Intercon Inc. v. Bell Atl. Internet Sol'ns*, 205 F.3d 1244, 1247 (10th Cir. 2000) (quoting *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)).

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995). "In Oklahoma, this two-

part inquiry collapses into a single due process analysis," because Oklahoma permits the exercise of personal jurisdiction to the full extent permitted by the United States Constitution. *Rambo v. American S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir.1998) (citing Okla. Stat. tit. 12, § 2004 F). Accordingly, the only question remaining is whether the exercise of personal jurisdiction over the nonresident defendant comports with due process. *See AST Sports Science*, 514 F.3d at 1057. The Due Process Clause prevents courts from exercising jurisdiction over a nonresident defendant unless "there exist 'minimum contacts' between the defendant and the forum state." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004). The "minimum contacts" standard can be satisfied in either of two ways: First, the court may exert specific jurisdiction over a defendant who has "purposefully directed his activities at residents of the forum," provided "the litigation results from alleged injures that arise out of or relate to those activities." *Id.* (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998)) (internal citations and quotation marks omitted).

The specific jurisdiction inquiry is a two-step process. Under the first step, the court must determine whether the defendant has "purposefully directed his activities at residents of the forum" and whether "the litigation results from the alleged injuries that arise out of or relate to those activities." *Benton v. Cameco Corp.*, 375 F.3d at 1075 (quoting *OMI Holdings, Inc.*, 149 F.3d at 1092). If the first step is satisfied, the court must then consider whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice." *Pro Axess, Inc. v. Orluz Distribution, Inc.*, 428 F.3d 1270, 1276-77 (10th Cir. 2005).

Alternatively, the court may maintain general personal jurisdiction over a defendant who has maintained continuous and systematic general business contacts with the forum state. *Id.* (quoting *OMI Holdings*, 149 F.3d 1986) (internal citations and quotation marks omitted).

### III. Individual Defendants' Rule 12(b)(2) Motion

The individual defendants assert the fiduciary shield doctrine precludes the exercise of personal jurisdiction. Alternatively, they argue that even if the fiduciary shield doctrine does not protect them, they lack connections with the forum sufficient to confer general or specific personal jurisdiction.

### A. Fiduciary Shield Doctrine

Under the fiduciary shield doctrine, exercise of personal jurisdiction over an individual may not be based solely on acts that individual performed in a purely representative capacity. *Home-Stake Production Company v. Talon Petroleum C.A.,* 907 F.2d 1012, 1017 (10th Cir. 1990). "The underpinning of [the] fiduciary shield doctrine is the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 902 (2d Cir. 1981). The doctrine is an equitable one, and the determination of the appropriateness of its application requires an analysis of the particular facts of a case. *Id.* at 903.

The Tenth Circuit has stated:

> Before a corporation's acts and obligations can be legally recognized as those of a particular person, and vice versa, it must be made to appear that the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness, of such person and corporation has ceased, and that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under particular circumstances, sanction a fraud or promote injustice.

*Ten Mile Industrial Park v. Western Plains Service Corp.*, 810 F.2d 1518, 1526-27 (10th Cir. 1987). Thus, "[w]here the acts of individual principals of a corporation in the jurisdiction were

carried out solely in the individuals' corporate or representative capacity, the corporate structure will ordinarily insulate the individuals from the court's jurisdiction." *Id.* at1527. (citations omitted). "Jurisdiction over the representative of a corporation may not be predicated on jurisdiction over the corporation itself, and jurisdiction over the individual officers and directors must be based on their individual contacts with the forum state." *Id.* The fiduciary shield doctrine "is not concerned with liability," but rather "is concerned with jurisdiction, and specifically with the fairness of asserting jurisdiction over a person who is acting solely in the interests of another." *Home-Stake,* 907 F.2d at 1017-18.

Where the corporation on whose behalf the defendant was allegedly acting is nothing more than a "mere instrumentality" of the individual, the fiduciary shield doctrine will not protect the individual from the court's exercise of personal jurisdiction. *Id.* at 1018. Additionally, some courts have found that a defendant acting in the capacity of a corporate employee may be subject to personal jurisdiction based on the corporation's contacts if the employee was instrumental in perpetrating fraud against the plaintiff. *See Labadie v. Protec Fuel Management, LLC*, 2011 WL 43088, **7-8 (N.D. Okla. Jan. 4, 2011); *Jayhawk Capital Management, LLC v. LSB Indus., Inc.,* 2009 WL 3766371, *19 (D. Kan. Nov. 10, 2009); *Shotwell v. Crocs Retail, Inc.,* 2007 WL 2446579, *3 (N.D. Okla. Aug. 23, 2007); *All American Car Wash, Inc. v. National Pride Equipment, Inc.,* 550 F. Supp. 166, 169-70 (W.D. Okla. 1981). However, the individual's contacts with the state must have been in connection with the wrong complained of by plaintiff. *See, i.e., All American Car Wash,* 550 F. Supp. at 170 (court found it had personal jurisdiction over individual defendant in lawsuit for alleged unfair business practices, where individual defendant made numerous trips to Oklahoma in connection with corporate defendant's lowering of its price per wash cycle—the alleged unfair business practice).

The Trustee takes the position that the fiduciary shield doctrine is inapplicable any time a corporate official participated in an alleged wrongful act; therefore none of the individual defendants may invoke the doctrine in this case.

Adoption of this position would eviscerate the doctrine, though, since its purpose is to shield individuals from liability for acts taken on behalf of their employer. Additionally, the interpretation urged by plaintiff confuses personal *liability* with personal *jurisdiction*. In *Marine Midland,* the court explained that personal liability of corporate officials does not equate to personal jurisdiction over those officials:

> [T]here is a dichotomy between the principles governing personal liability of corporate agents for torts committed…and the principles governing the amenability of such agents to personal jurisdiction solely on the basis of those acts…if an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct. Thus, his conduct, although it may subject him to personal liability, may not form the predicate for the exercise of jurisdiction over him as an individual.

664 F.2d at 902. The court rejected the view—urged by plaintiff in this case—that the "fiduciary shield should never be made available where the actions of corporate agents are tortious." 664 F.2d at 902-03.

In *Home-Stake,* the Tenth Circuit, citing *Marine Midland Bank,* stated:

> As an equitable principle, the fiduciary shield doctrine is not applied mechanically; the determination of the appropriateness of its application requires an analysis of the particular facts of the case. In each instance, fairness is the ultimate test.
>
> In evaluating the fairness of subjecting an individual to personal jurisdiction for acts done in his role as a corporate employee, it is appropriate to focus not only on the fealty of the employee to the corporation in the performance of those acts, but also on the nature of the corporation and the individual's relationship to it. If the corporation is a mere shell for its owner, the employee-owner's

actions may be viewed as having been taken simply in his own interest. In such circumstances it will not advance notions of fairness to allow the owner of the corporation to invoke the protections of the fiduciary shield.

907 F.2d at 1017.

As instructed in *Home*-Stake and *Marine Midland Bank,* the court has examined the allegations and evidence to determine whether it is fair, under the circumstances, to exercise personal jurisdiction over individual defendants based on acts taken on behalf of the corporations. Here, the gravamen of plaintiff's complaint is that defendants took action and made decisions that resulted in undercapitalization of the subsidiary; an excessive debt burden, a predatory loan; and sale of the subsidiary at far below value—all to the benefit of the Parent. These allegations do not suffice to establish *direct personal benefit* on the part of *any* of the defendants. Nor has plaintiff provided evidence that the acts directly targeted any person or business in Oklahoma. Therefore, the court concludes the fiduciary shield doctrine insulates defendants from personal jurisdiction for the alleged conduct undertaken on behalf of Mahalo USA.

## B. General or Specific Personal Jurisdiction

Even if the corporate shield doctrine did *not* bar this court's exercise of personal jurisdiction, plaintiff has not identified contacts sufficient to establish either general or specific personal jurisdiction over the individual defendants.

### 1. General Personal Jurisdiction

"[B]ecause general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts'" with the forum state. *OMI Holdings, Inc.,* 149 F.3d at 109 (citation and quotation marks omitted). When evaluating

whether a defendant has established general contacts with a particular forum, courts have considered, among other things, the following 12 factors: (1) Whether the defendant conducts business in the state; (2) whether the defendant is licensed to conduct business in the state; (2) whether the defendant owns, leases, or controls property or assets in the state; (4) whether the defendant maintains employees, offices, agents or bank accounts in the state; (5) whether the defendant's shareholders reside in the state; (6) whether the defendant advertises or otherwise solicits business in the state; (8) whether the defendant travels to the state by way of salesperson or other representatives; (9) whether the defendant pays taxes in the state; (10) whether the defendant visits potential customers in the state; (11) whether the defendant recruits employees in the state; and (12) whether the defendant generates a substantial portion of its national sales or income through revenue generated from in-state customers. *Soma Med. Int'l. v. Standard Chartered Bank,* 196 F.3d 1292, 1295-96 (10th Cir. 1999) (quoting *Buddensick v. Stateline Hotel, Inc.,* 972 P.2d 928, 930-31 (Utah Ct. App., 1998)); *see also Smith v. Basin Park Hotel, Inc.,* 178 F. Supp.2d 1225, 1231 (N.D. Okla. 2001).

None of the individual defendants' contacts with Oklahoma are sufficient to establish general personal jurisdiction.

### 2. Specific Personal Jurisdiction

Wolfe, Butler and Lawson lack contacts with Oklahoma sufficient to confer specific personal jurisdiction over them. Wolfe has never traveled to Oklahoma for any reason. Butler has only made three trips to Oklahoma in his entire life; those trips occurred between 1968 and 1978 and were unrelated to Mahalo USA or the Parent. Lawson traveled to Oklahoma 10 years ago on a trip unrelated to Mahalo USA or the Parent. None had communications with anyone in Oklahoma in connection with the actions about which the Trustee complains.

The remaining defendants have traveled to Oklahoma on business trips related to Mahalo USA and/or the Parent. However, none of the trips pertained to the alleged misconduct. Instead, the trips were in connection with day-to-day management of Oklahoma operations, property acquisitions, or the 2005 trip with potential investors in the Parent.

Plaintiff has identified 24 acts by defendants which he contends are sufficient to give this court personal jurisdiction over them. He alleges the individual defendants:

- Authorized numerous intercompany debt transactions with Mahalo USA, thereby encumbering the entity and rendering it insolvent and unable to pay the claims of its trade creditors in Oklahoma;

- Filed a claim on behalf of Parent against Mahalo USA in the Oklahoma bankruptcy proceedings, based upon the intercompany debt transactions;
- Acted as "Responsible Party" in connection with the negotiation and consummation of the Ableco Transaction, in their dual capacities acting for Borrower and Parent;

- Authorized BDP to facilitate finalizing the Ableco Transaction;

- Caused Mahalo USA to be incorporated in Delaware;

- Qualified Mahalo USA to do business in the State of Oklahoma;

- Caused Mahalo USA to file a voluntary chapter 11 petition in the Eastern District of Oklahoma;

- Caused Mahalo USA to execute resolutions and certificates incident to the Ableco Transaction;

- Caused Mahalo USA to enter into a Management Agreement with the Parent and structured same to cause payments and transfers to be made to Parent;

- Caused Mahalo USA to enter the Ableco Transaction because otherwise "the equity holder would see nothing";

- Attended numerous meetings at which Mahalo USA's entry into the Ableco Transaction and Ableco Amendment were discussed and approved;

- Attended and actively participated in the bankruptcy proceedings of Mahalo USA in Oklahoma;

- Corresponded with Ableco from Oklahoma regarding the Ableco Transaction;

- Corresponded and negotiated with Ableco regarding sale of Mahalo USA assets in Oklahoma;

- Provided due diligence to Ableco on Mahalo USA;

- Caused and authorized payments to be made to BDP from Mahalo USA funds;

- Caused mortgages to be recorded against the assets of Mahalo USA in Oklahoma, securing the Parent's debt;

- Facilitated property purchases by Mahalo USA;

- Operated Mahalo USA as a "field office";

- Actively participated in the terms and structure of the post petition financing in the bankruptcy proceedings in Oklahoma, in order to, among other things, enable funds to be transferred from Oklahoma to Canada;

- Tracked claims and litigation against Mahalo USA in the bankruptcy proceedings;

- Sought to defeat the claims of creditors against officers and directors in the Oklahoma bankruptcy proceeding, by means of their agents located in Oklahoma;

- Made transfers of the funds of Mahalo USA from Oklahoma bank account to the Individual Defendants and/or Parent; and

- Sought a release on behalf of the insiders of Mahalo USA and Parent in the bankruptcy proceedings.

[Dkt. #24 at 16-18].

Applying the two-part analysis for specific jurisdiction, the court must determine whether defendants, by taking the alleged actions, purposefully directed their activities at residents of the forum and whether the litigation results from alleged injuries that arise out of or relate to those activities. *Benton,* 375 F.3d at 1075.

Plaintiff contends in this suit that defendants mismanaged Mahalo USA and took actions that benefited the Parent to the detriment of the subsidiary. Many of the actions on plaintiff's list are completely unrelated to the harm alleged. For example, neither the fact that defendants

caused the incorporation of Mahalo USA in Delaware, nor the qualification of the company to do business in Oklahoma has any direct bearing on the harm this lawsuit. Even the filing of or participation in the bankruptcy action is not the harm alleged to have been caused by defendants.

Further, the Trustee has failed to identify any conduct in Oklahoma which led to Mahalo USA's financial collapse. The Complaint itself avers "the affairs of Mahalo USA were run from Canada." [Dkt. #2, Complaint at ¶11]. Although the Trustee states that the alleged misconduct damaged creditors in Oklahoma, he has made no showing the conduct was *targeted* at any person or entity in the state. Thus, even absent the corporate shield doctrine, specific personal jurisdiction over the individual defendants has not been established.

### IV. Attorney Defendants' Rule 12(b)(2) Motion

The Trustee asserts a claim against Lawson and BDP for breach of fiduciary duty based on legal services the Attorney Defendants provided in connection with the Peregrine acquisition. He asserts an alternative claim against BDP for aiding and abetting the Parent Defendants' breaches of fiduciary duty. Although plaintiff claims the Attorney Defendants provided legal advice to Mahalo USA "in connection with the Ableco Transaction, the Ableco Amendment and the Intercompany Debt Transactions," he does not identify any specific advice given to Mahalo USA or related to Oklahoma or the United States.

The Complaint fails to allege facts sufficient to confer general personal jurisdiction over the Attorney Defendants. Lawson has traveled to Oklahoma only once on a matter unrelated to Mahalo USA or the Parent. MacKenzie, as an observer on behalf of Canadian directors and officers, attended a one-day court hearing on the Mahalo USA bankruptcy in the Eastern District of Oklahoma. No BDP attorneys are licensed to practice law in the United States or Oklahoma and none have done so. According to MacKenzie, in the course of BDP's representation of the

Parent, when any advice was required for activities involving Oklahoma or United States law, counsel in the United States was retained by Mahalo USA, BDP or the Parent.

Similarly, the Complaint fails to allege facts sufficient to satisfy the requirements for specific jurisdiction over the Attorney Defendants. There are no facts upon which the court could conclude either Lawson or BDP purposefully directed their activities at residents of Oklahoma or that the litigation results from alleged injuries that arise out of or relate to that advice. *Benton,* 375 F.3d at 1075. The court lacks personal jurisdiction over the Attorney Defendants.

## V. Conclusion

For the foregoing reasons, the Individual Defendants' Motion to Dismiss [Dkt. #18] and the Attorney Defendants' Motion to Dismiss [Dkt. #19] for lack of personal jurisdiction are granted. Having granted defendants' Motions to Dismiss pursuant to Rule 12(b)(2), the court does not reach defendants' Rule 12(b)(6) arguments.

ENTERED this 19th day of March, 2012.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT