IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| P. DAVID NEWSOME, JR., LIQUIDATING TRUSTEE OF MAHALO ENERGY (USA), INC., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 11-CV-140-GKF-PJC ) |
| WILLIAM GALLACHER, DUNCAN CHISHOLM, GARY H. DUNDAS, JEFF G. LAWSON, JAMES BURNS, KEVIN WOLFE, DAVID E. BUTLER and GRANT A. MACKENZIE, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the court is the Motion to Dismiss [Dkt. #81] filed by defendants Jeff G. Lawson ("Lawson") and Grant A. MacKenzie ("MacKenzie"). Lawson and MacKenzie contend plaintiff's First Amended Complaint impermissibly asserts legal malpractice claims that are precluded by this court's earlier dismissal, which was affirmed on appeal by the Tenth Circuit. They seek dismissal of the claims and ask the court to strike all factual allegations regarding their legal advice and services. Additionally, they seek sanctions against the plaintiff.

The plaintiff, P. David Newsome Jr., Liquidating Trustee of Mahalo Energy (USA), Inc. ("Trustee"), opposes the motion.

## I. Background/Procedural Status

This lawsuit arises from the failure of Mahalo Energy (USA) ("Mahalo USA"), a Delaware corporation, and its parent, Mahalo Energy Ltd. ("Parent"), a Canadian company located in Alberta, Canada. Defendants are Canadian citizens and residents of Alberta who were officers and/or directors of Mahalo USA and/or the parent. MacKenzie is a partner of the Canadian law firm, Burnet, Duckworth and Palmer, LLP ("BDP") and Lawson is a former partner of BDP. Both attorneys provided legal services to the Parent and related affiliates.

In May 2009, Mahalo USA filed a Chapter 11 bankruptcy petition in the United States District Court for the Eastern District of Oklahoma. Plaintiff was appointed as the liquidating trustee and successor-in-interest to the claims of the reorganized debtor. On March 8, 2011, the Trustee filed this action against former officers and directors of Mahalo USA and the Parent, as well as BDP and Lawson. The Trustee's Complaint asserted claims for breach of fiduciary duties and aiding and abetting breach of fiduciary duties. The claims against BDP were based on legal services its attorneys provided the Parent and affiliates. The claims against Lawson were based both on the legal services he performed as a BDP partner and on his role as an officer of the Parent.

BDP and Lawson filed a Motion to Dismiss the legal services-related claims, asserting lack of personal jurisdiction. [Dkt. #19]. The motion was supported by the declarations of Lawson, individually, and MacKenzie, on behalf of BDP, concerning their contacts with Oklahoma. [*Id.*, Exs. 1 and 2].

Lawson's declaration established, *inter alia*, that:

- he is a Canadian citizen residing in Calgary; he was a partner at BDP from 1997 until September 2007;

- he never owned any interest in Mahalo Energy (USA), nor was he an officer or director of Mahalo USA;

- he never advised Mahalo USA regarding Oklahoma or United States law; he is not licensed to practice law in Oklahoma; and

- he has been in Oklahoma on only one occasion for a meeting with representatives of another company on business unrelated to Mahalo USA. [*Id.*, Ex. 1].

MacKenzie's declaration established that:

- he has been an attorney at BDP since 2003 and is a partner in the firm;

- BDP is a Canadian law firm with its office and principal place of business located in Calgary, Alberta, Canada;

- BDP has had an attorney/client relationship with the parent;

- in the course of BDP's representation of the Parent, when any advice was required for any activities involving Oklahoma law or United States law, counsel in the United States was retained by Mahalo USA, BDP or Parent;

- upon information and belief, Mahalo USA obtained its own counsel in the United States and Oklahoma for anything related to issues arising there;

- BDP never advised any entity or person on the laws of Oklahoma or of the United States;

- MacKenzie was the only BDP attorney who ever visited Oklahoma regarding Mahalo USA;

- MacKenzie attended one day in court in the bankruptcy of Mahalo USA in the U.S. Bankruptcy Court for the Eastern District of Oklahoma as an observer for the benefit of the Canadian directors and officer;

- BDP maintains no offices in Oklahoma, owns no property in the state, has no employees in the state, has never advertised in Oklahoma, conducts no business in the state; has no bank accounts in the state, and pays no taxes in the state.

[*Id.*, Ex. 2].

The Trustee did not request or undertake jurisdictional discovery before responding to the attorney defendants' Motion to Dismiss. Rather, counsel for the Trustee, William Federman and Joshua Wells, submitted declarations attaching documents produced in the Chapter 11

3

bankruptcy of Mahalo USA. [Dkt. ##25-26, 40-41, 49]. In particular, attorney Wells listed legal work by Lawson and BDP which the Trustee contended established a sufficient basis for the exercise of personal jurisdiction. [Dkt. #26]. The court struck the Federman and Wells declarations on the grounds that (1) they were hearsay statements by the attorneys, who were not the official custodians of Mahalo USA's files and records; (2) the attorneys could not serve in the dual capacities of witness and advocate; and (3) neither attorney had personal knowledge of the files and records. [Dkt. #54]. However, as the Tenth Circuit opinion noted, the court—in its order dismissing Newsome's complaint—took the factual assertions in the complaint concerning the individual defendants' contacts with Oklahoma at face value. *Newsome v. Gallacher*, 722 F.3d 1257, 1265 n.2. (10th Cir. 2013). The Tenth Circuit stated that the district court did not do likewise with evidence concerning the law firm, but concluded "the district court nonetheless reached the right result in dismissing the law firm." *Id.* at 1265 n.2.

The court granted defendants' motion to dismiss on March 29, 2012. [Dkt. #55]. On July 17, 2013, the Tenth Circuit affirmed the dismissal of BDP and Lawson in his capacity as a partner of the law firm. *Id*. at 1279-81.

In so ruling, the Tenth Circuit characterized the breach of fiduciary claims against BDP and Lawson as claims for legal malpractice. *Id.* at 1279. It stated that "[t]he law firm establishes by affidavit that it performed all of its services related to this lawsuit in Canada" and "Newsome does not contradict this."[1] *Id.* at 1280. It noted that courts are split regarding whether out-of-state legal work on an out-of-state matter can subject an out-of-state lawyer to personal jurisdiction in the client's home forum. *Id.* Siding with the majority view, it stated:

> [A]n out-of-state attorney working from out-of-state on an out-of-state matter does not purposefully avail himself of the client's home forum's laws and

---
[1] The Tenth Circuit's analysis focused on BDP, but in a footnote, it stated," This analysis also applies to Lawson in his capacity as an attorney for the firm." *Id.* at 1279 n.7.

4

privileges, at least not without some evidence that the attorney reached out to the client's home forum to solicit the client's business. Other distinguishing factors may be relevant as well, which we need not catalogue here. In this case, the law firm is a Canadian entity hired by Canadian-owned and –headquartered companies to perform legal work from Canada on transactions consummated in Canada. Further, the law firm never reached out to Mahalo USA in Oklahoma to solicit its business, but instead had Mahalo USA's business by virtue of representing its Canadian parent company in Canada. Save for "facilitat[ing] the placement of liens on Oklahoma property and receiving payments from Mahalo USA's Oklahoma bank accounts, the law firm had virtually no connection to Oklahoma as relevant to the circumstances that gave rise to this lawsuit.

*Id.* at 1280-81. The court held that personal jurisdiction was lacking over both BDP and Lawson in his capacity as a partner of BDP, and "the district court properly dismissed the law firm [and Lawson] for lack of personal jurisdiction." *Id.* at 1279 n.7, 1281.[2]

After remand, the Trustee—with leave of court—filed a First Amended Complaint. [Dkt. #76]. The amended complaint contains additional allegations about Lawson and adds MacKenzie as a defendant. [*Id.*].

### III. Allegations of the First Amended Complaint

The First Amended Complaint categorizes Lawson as a Parent Defendant and MacKenzie as a Mahalo USA Defendant and a Parent Defendant. [*Id.* at 1, n.1].

With respect to Lawson,[3] the Trustee's First Amended Complaint alleges:

> 46. At all times relevant to this Complaint, beginning in approximately July 2005 until he resigned his positions with Parent on or about January 14, 2009, Lawson was an insider director of Parent and was a member of Parent's Compensation Committee.
>
> 47. At all times relevant to this Complaint, Lawson was a partner and member of the Executive Committee of [BDP], which provided legal services to Parent, **and Mahalo USA** acting as their outside general counsel. **On information and belief, at all times relevant to this Complaint, BDP also provided significant legal services to other entities owned or controlled by**

---

[2]The Tenth Circuit held that this court *does* have personal jurisdiction over Lawson in his capacity as a director of the Parent. *Id.* at 1281.
[3] Allegations about Lawson not included in the original Complaint are highlighted in bold-face print.

5

> **Defendant Gallacher**. In 2008 Lawson ended his association with BDP to accept a position at Blackmont Capital in Toronto, Canada. At all times relevant to this Complaint, up until January 19, 2009, there was an attorney-client relationship between Lawson and Mahalo USA. At all times relevant to this Complaint, up until January 19, 2009, there was a simultaneous attorney-client relationship between Lawson and Parent. Upon information and belief, at all times relevant to this Complaint, there was a simultaneous attorney-client relationship between Lawson and Avenir.
>
> 48. **Initially, Lawson began his relationship with Mahalo USA for the purpose of providing legal services. Then, in the course of the rendition of the services, he subsequently stepped beyond the strictly legal role to undertake to render services which a non-lawyer could render, such as serving as a Director of Parent. On information and belief, Lawson, took on the responsibility to advise the Parent's Board on corporate governance matters, including those involving or affecting Mahalo USA. On information and belief, he conferred frequently with MacKenzie and Gallacher regarding Mahalo USA and its corporate affairs. The services he rendered as Director of Parent, including those relating to Mahalo USA, included ones that employed his knowledge, experience and training as a corporate law specialist.**

[Dkt. #76, First Amended Complaint, ¶¶47-48]. The First Amended Complaint also alleges "upon information and belief" that: Lawson held a 0.3 percent equity interest in the Parent; **beginning in approximately September 2005, he was an insider director of Peregrine and held a material financial interest in Peregrine, up until the time of Peregrine's acquisition by Parent;** and at all times relevant to the complaint, served as the corporate secretary of Avenir Diversified Income Trust. [*Id.*, ¶¶49-51].

With respect to MacKenzie, the First Amended Complaint alleges:

- MacKenzie simultaneously served as the corporate secretary of both Parent and Mahalo USA and acted as an agent of Mahalo USA; was corporate secretary of Peregrine; and was a partner of BDP, which provided legal services to the Parent and, at the same time, to Mahalo USA and to other entities owned or controlled by Gallacher. [*Id.*, ¶¶67-69].

- At all relevant times there was an attorney-client and/or agency relationship between MacKenzie and Mahalo USA. [*Id.*, ¶70].

6

- MacKenzie had a conflict of interest due to the simultaneous attorney-client relationship between MacKenzie and Parent. [*Id.*, ¶71].

- "Initially, MacKenzie began his relationship with Mahalo USA for the purpose of providing legal services. Then, in the course of the rendition of the services he stepped beyond the strictly legal role to undertake to render services which a non-lawyer could render, such as serving as the corporate secretary of Mahalo USA and Parent. On information and belief, MacKenzie became the primary erson responsible for . . . advising Mahalo USA and its Board on corporate governance matters, and he was responsible for, among other things, the preparation of all corporate governance documents relating to Mahalo USA. On information and belief, he conferred regularly with Defendant Lawson and Gallacher regarding Mahalo USA corporate governance. The services MacKenzie rendered as corporate secretary of Mahalo USA and as corporate secretary of Parent included ones that employed his knowledge, experience and training as an experienced corporate law specialist, and some of these acts may well have been taken while engaged in the practice of law." [*Id.*, ¶72].

- "MacKenzie did not just perform ministerial tasks for Mahalo USA; rather he was retained by Mahalo USA to analyze federal and Oklahoma law, to draft documents for transactions concerning Oklahoma properties, and to advise Mahalo USA, while wearing the dual hats of outside corporate counsel to and insider officer of Mahalo USA, that is, corporate secretary. MacKenzie provided services to Mahalo USA knowing that Mahalo USA was an Oklahoma domicile—indeed, he advised on, prepared, and filed the documents with the state of Oklahoma that authorized Mahalo USA to conduct business in Oklahoma. MacKenzie also knew that the transactions he advised Mahalo USA on concerned real properties located in Oklahoma. On information and belief, MacKenzie drafted and commented on the documentation for virtually all of Mahalo USA's transactions relating to Mahalo USA and its Oklahoma real property assets. On information and belief, MacKenzie was the primary drafter and approver, but sent these to various local counsel in Oklahoma for secondary review, whom, on information and belief, he hired, and whom he managed and directed and whom he regularly communicated with in Oklahoma by mail, email, and phone, on a regular basis. The Oklahoma law firms with whom he regularly corresponded and conferred included McAffey & Gore, Oklahoma City, Oklahoma; and Andrews, Davis, Oklahoma City, Oklahoma. MacKenzie knew that Oklahoma law would govern the transaction documents he drafted and advised upon, in that they concerned the purchase, disposition and/or hypothecation of Mahalo USA's oil and gas assets located in Oklahoma, which, if done properly, would have required analysis of U.S. federal and Oklahoma statutes. MacKenzie purposefully directed his activities at Oklahoma and was fully aware that his actions would have a substantial effect in Oklahoma." [*Id.*, ¶73].

The First Amended Complaint lists activities MacKenzie allegedly undertook on behalf of Mahalo USA and/or the Parent that establish contacts with Oklahoma sufficient to confer personal jurisdiction. [*Id.*, ¶74(a)-(g)].[4] The activities include attending board meetings, drafting and circulating corporate resolutions and minutes and negotiating and drafting various credit agreements. The Trustee alleges MacKenzie hired and gave direction to the Oklahoma law firm and other professionals in connection with the Mahalo USA bankruptcy proceedings.

The First Amended Complaint also states:

> MacKenzie, by virtue of his concurrent dual roles as corporate secretary and corporate counsel to Mahalo USA, established a continuing confidential relationship with Mahalo USA in Oklahoma, from Mahalo USA's cradle to grave, which extended for at least five years, continuing through its bankruptcy proceedings. In light of his confidential relationship and dual roles, MacKenzie owed heightened fiduciary duties of loyalty, due care, good faith and disclosure to Mahalo USA. MacKenzie's breaches of his fiduciary duties and his errors and omissions, including his failures to adequately advise the board of Mahalo USA regarding the harmful and improvident transactions Mahalo entered into were a direct and substantial cause of Mahalo USA's financial losses.

[*Id.*, ¶75].

The Trustee asserts claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty against all defendants. With respect to the Mahalo USA Defendants, including MacKenzie, the First Amended Complaint alleges:

> By virtue of the Mahalo USA Defendants' positions as controlling persons, officers, sole director of Mahalo USA, and/or its agents or *attorneys*, a fiduciary relationship existed between each Mahalo USA Defendant and Mahalo USA. Additionally, from and after approximately November 2006, when Mahalo USA was insolvent, the Mahalo USA Defendants also owed fiduciary duties to Mahalo USA its creditors.

[*Id.*, ¶174] (emphasis added).

Additonally, with respect to MacKenzie, he alleges:

---

[4] The allegations track the allegations in Dkt. ##26 and 41, earlier Wells' declarations that detailed the activities of Lawson and BDP, except "MacKenzie" has been substituted for "BDP." [Dkt. ##26, 41].

. . . [A]s a corporate law specialist, he had a heightened awareness and, in fulfilling his role as a senior corporate officer and corporate secretary for Mahalo USA and Parent, respectively, had a duty to bring to the attention of each board the need to obtain independent advice and regarding the risks of the aforementioned transactions.  MacKenzie failed to do so. Defendant MacKenzie: (a) failed to advise that Defendant Burns was not independent and had a conflict of interest; (b) failed to advise Mahalo USA to seek independent financial advice regarding the transactions; (c) failed to advise Mahalo USA to independently investigate the effects of the transactions alleged in his First Amended Complaint under U.S. law; (c) failed to advise Mahalo USA to take customary good governance measures of setting up independent committees to review corporate transactions; (d) failed to properly advise the board of Mahalo USA regarding the implications of Mahalo USA's insolvency; (e) failed to advise the board of Mahalo USA to obtain independent legal advice and separate counsel; (f) failed to advise the board of Mahalo USA that he was not disinterested, that Dundas was not disinterested, that BDP was not disinterested, that as such, they could not properly exercise duty of loyalty and care, in light of the pervasive conflicts of interest; (g) failed to advise the board and senior management on proper corporate governance, that is, that Mahalo USA should set up an independent board or committee to make an independent determination on all interested transactions, that the board of Mahalo USA should have obtained independent financial counsel, independent legal counsel, that the board [of] Mahalo USA should have obtained a fairness opinion in respect to material transactions; (h) failed to advise the board that it was a breach of duty to burden Mahalo USA with the debt of the Parent, and (i) failed to advise the board that in his own dual role as an executive and counsel, he had a conflict of interest due to his dual role both as lawyer and executive for parent an subsidiary.  In all these respects, MacKenzie's experience as a corporate law specialist should have made him especially attuned to all of these risks, including with respect to the fiduciary considerations that were implicated by the insolvency of Mahalo USA and of the need to obtain independent advice in light of the serious conflicts of interest that beset, not only the board of Mahalo USA, but himself as well.

In addition, Defendant MacKenzie directly participated in the ill-advised Peregrine Acquisition, and authorized the registration of the Plan of Arrangement, filed in Canada on January 6, 2006 pursuant to the Business Corporations Act, which registration effectuated the acquisition of Peregrine by Parent.  Upon information and belief, MacKenzie later was a direct primary participant in the determinations made by the respective boards of Parent and Mahalo USA to shift the debt assumed by Parent with regard to that acquisition to Mahalo USA, when MacKenzie knew or should have known Mahalo USA was insolvent. MacKenzie failed to advise the respective boards of Mahalo USA and Parent of the impropriety of this act.  MacKenzie's failure to properly advise the board of Parent and Mahalo USA of these facts was a substantial cause of the demise of Mahalo USA.

[*Id.* ¶¶200-201].

### IV. The Attorney Defendants' Motion to Dismiss

The central focus of defendants' motion is the extent to which the Tenth Circuit decision precludes the assertion of claims for legal malpractice against Lawson and MacKenzie. The defendants argue (1) the claims are barred by claim and issue preclusion and res judicata; (2) alternatively, the Trustee fails to allege acts conferring personal jurisdiction over them for the alleged legal malpractice; (3) the claims against them based on their actions as lawyers are separate from the claims against them based on their actions as officers, directors and shareholders; and (4) the allegations concerning their actions as lawyers should be stricken. Additionally, they seek sanctions against the Trustee.

In support of their motion, defendants attach the Lawson declaration filed in support of the motion to dismiss the original Complaint and a new MacKenzie declaration that is substantially similar to his earlier declaration on behalf of BDP.

The Trustee asserts the only preclusive effect of the Tenth Circuit decision was as to personal jurisdiction over MacKenzie and Lawson in their capacity as attorneys for BDP, and the Tenth Circuit "clearly did not reach the question of personal jurisdiction for any legal malpractice claim against any defendant outside of his capacity as an attorney of BDP." [Dkt. #122 at 22-23]. He contends (1) Lawson continued to provide legal services to Mahalo USA after he left BDP; and (2) even though MacKenzie, at all relevant times, was a BDP attorney, he performed legal services for Maholo USA outside his capacity as a BDP attorney,[5] and since he

---

[5] In support of this statement, the Trustee points to alleged inconsistencies between MacKenzie's earlier declaration on behalf of BDP and his declaration in support of the pending Motion to Dismiss. Specifically, he states:

> Previously, MacKenzie attested that BDP rendered *no* legal advice for Mahalo USA on U.S. law. [Dkt. 19-2, ¶¶8, 9, 11.] He also stated that BDP had an attorney-client relationship *with the Parent*—not Mahalo USA. [*Id.*, ¶7]. Thus any legal services performed by MacKenzie on behalf of Mahalo USA were necessarily *not* in his capacity as a BDP lawyer. This Court and the Tenth Circuit relied on these

10

served as both an attorney and officer of Mahalo USA, this dual role is a "distinguishing factor" that establishes personal jurisdiction over him for a legal malpractice claim. [*Id.* at 22] (referencing *Newsome*, 722 F.3d at 1280-81). He argues he has alleged enough new facts regarding MacKenzie's alleged legal work outside his role as a BDP attorney to create a material issue of fact as to personal jurisdiction over MacKenzie and, therefore, the motion to dismiss should be denied with respect to MacKenzie.[6]

Alternatively, he urges the court to exercise pendent jurisdiction over the legal malpractice claims. [*Id.* at 26]. Further, the Trustee argues that regardless of whether any claim for legal malpractice remains in this lawsuit, allegations about the attorney defendants' legal work for Mahalo USA and the Parent are relevant to their corporate fiduciary duties, and he is entitled to assert such facts. [*Id.* at 6].

## A. Preclusion

As previously noted, the Tenth Circuit characterized the Trustee's legal services-based breach of fiduciary claims against Lawson and BDP as claims for legal malpractice; held that an out-of-state attorney working from out-of-state on an out-of-state matter does not purposefully

---

statements in dismissing all claims against BDP. Now, on remand, MacKenzie contradicts himself, apparently asserting an attorney-client relationship with Mahalo USA and attesting that all advice was rendered by him in his capacity as a BDP lawyer. [Dkt. No. 81-2, ¶¶10-11].

However, this statement mischaracterizes MacKenzie's declarations. MacKenzie did *not* state in the first declaration that BDP did *not* have an attorney-client relationship with Mahalo USA. Rather, he merely stated that BDP had an attorney-client relationship with Parent. [Dkt. No. 19-2, ¶7]. And MacKenzie, in his second declaration did *not* affirmatively state he had an attorney-client relationship with Mahalo USA; rather he stated, "I, through BDP, have had an attorney/client relationship with some of the entities in this lawsuit." [Dkt. #81-2, ¶10]. Consistent with ¶11 of his first declaration, he states, "Neither BDP nor I have ever advised any entity or person on the laws of Oklahoma or of the United States." [*Id.*, ¶15]. Consistent with ¶8 of his first declaration, he states, "In the course of BDP's representation, and therefore my representation, when any advice was required for any activities involving Oklahoma law or United States law, counsel in the United States of America was retained by Mahalo USA, BDP or Parent. [*Id.*, ¶12]. And consistent with ¶9 of his first declaration, he states, "Mahalo USA obtained its own counsel in the United States of America and in the State of Oklahoma for anything related to issues arising there." [*Id.*, ¶13].

[6] The Trustee states, "[A]s to Lawson, there is no legal malpractice claim asserted. . . . [t]hus, so far as the Motion to Dismiss pertains to Lawson, it has no target and so, no effect." [*Id.* at 28]. However, in the First Amended Complaint, the Trustee alleges Lawson continued to perform legal work for Mahalo USA and had "an attorney-client and/or agency relationship" with Mahalo USA (after he left BDP) until January 19, 2009. [Dkt. #76, ¶70].

avail himself of the client's home forum's laws and privileges; and concluded that personal jurisdiction was lacking over both BDP and Lawson in his capacity as a partner of BDP.

The parties, in their briefs, focus on the question of whether the doctrine of issue preclusion operates to bar the Trustee's new allegations.[7] However, the more appropriate framework for analysis of this issue is the "law of the case" doctrine.

As the Tenth Circuit has explained:

> The law of the case doctrine provides [w]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. Thus when a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal. This principle applies to all issues previously decided, either explicitly or by necessary implication.

*Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995) (citations and quotations omitted). "Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Kennedy v. Lubar*, 273 F.3d 1293, 1298 (10th Cir. 2001) (quoting 18 Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction § 4478, at 788 (1981)). "This doctrine is based on sound public policy that litigation should come to an end and is designed to bring about a quick resolution of disputes by preventing continued re-argument of issues already decided." *U.S. v. Alvarez*, 142 F.3d 1243, 1247 (10th Cir. 1998) (citation omitted). "Particularly with today's crowded dockets, a litigant given one good bite at the apple should not have a second." *Id.* (citation omitted).

---

[7]Issue preclusion is applicable to situations in which there has been an adjudication on the merits of an issue in a *prior* action. *See*, *i.e.*, *Matosantos Commercial Corp. v. Applebee's International, Inc.*, 256 F.3d 1203 (10th Cir. 2001) (finding doctrine of collateral estoppel precluded a subsequent relitigation of the same jurisdictional issue between the same parties); *Stewart Securities Corp. v. Guaranty Trust Co*., 597 F.2d 240 (10th Cir. 1979) (same).

12

In this case, the Trustee originally asserted legal malpractice claims against Lawson and BDP. When defendants filed their motion to dismiss and accompanying declarations of Lawson and MacKenzie, the Trustee had the opportunity to conduct jurisdictional discovery, but did not do so. Further, the pleadings filed by the Trustee in opposition to the motion to dismiss the original Complaint establish the Trustee was well aware not only that BDP performed legal services for the Parent and related entities, but also that MacKenzie was the BDP attorney who performed much of the work. [*See* Dkt. #23 at 6-7, 11-12; Dkt. #48 at 7, 21-23; Dkt. #49 at 2].[8] Nonetheless, the Trustee did not attempt to add MacKenzie as a defendant.

The Tenth Circuit found that the law firm had established by affidavit that it performed all of its services related to this lawsuit in Canada; the law firm and Lawson were "out-of-state attorney[s] working from out-of-state on an out-of-state matter;" and that this was not sufficient to establish the district court's personal jurisdiction over the law firm and lawyer. *Newsome*, 722 at 1279-80. These findings are part of the law of this case, and the court's evaluation of personal jurisdiction must take them into account.

Where the court's personal jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists. *AST Sports Science, Inc. v. CLF Dist. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008). If the question of personal jurisdiction is disputed in the preliminary stages of litigation, "the plaintiff need only make a prima facie showing of jurisdiction to defeat the motion [to dismiss]." *Id.* "However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true." *Intercon, Inc. v. Bell Atlantic Internet Solutions*, 205 F.3d 1244, 1247 (10th Cir. 2000).

---

[8] As a partner of BDP, MacKenzie was clearly in privity with BDP. *See Purmal v. Robert N. Wadington & Associates,* 820 N.E.2d 86, 94-95, 97 (Ill. App. 2004) (holding that individual attorneys were covered by the res judicata effect of a prior legal malpractice action involving their law firm because, as partners and associates, they were in privity with the law firm).

The First Amended Complaint, in essence, substitutes MacKenzie for BDP and beefs up earlier allegations about legal work BDP/MacKenzie/Lawson did for the Parent, Mahalo USA and other related entities. The only new substantive allegation—that MacKenzie and Lawson performed legal work outside their capacity as BDP attorneys—is conclusory in nature, and the amended complaint alleges no facts to support such a conclusion. The Trustee has failed to carry his burden of establishing personal jurisdiction with respect to the legal malpractice claims.

Accordingly, to the extent the Trustee's claims against Lawson and MacKenzie are based on performance of legal services, they are barred by the law of the case.

### B. Pendent Jurisdiction

Alternatively, the Trustee urges the court to assume pendent jurisdiction over the legal malpractice claim against MacKenzie. The Tenth Circuit has stated:

> Pendent personal jurisdiction . . . exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim. In essence, once a district court has personal jurisdiction over a defendant for one claim, it may "piggyback" onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which is has proper personal jurisdiction.

*U.S. v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002) (citations omitted). Even where a court could legally exercise pendent personal jurisdiction over a claim, the district court retains discretion to dismiss the pendent claims "where considerations of judicial economy, convenience and fairness to litigants so dictate." *Oetiker v. Jurid Were, G. m. b. H.*, 556 F.2d 1, 5 (D.C. Cir. 1977).

Following remand, the focus of this case is acts or omissions by defendants in their role as officers and directors. The legal malpractice claims arise from a separate duty and implicate

14

conduct distinct from the alleged malfeasance of the officers and directors. Therefore, the court concludes the pendent claims do not arise from the same core facts.

Further, even if the claims arose from a common core of facts, the court would decline to exercise pendent jurisdiction over the legal malpractice claims. This case is more than three years old. It involves suit against eight Canadians who are former officers and directors of the Parent and/or affiliates. The claims of breach of fiduciary duty and aiding and abetting are based on a complex set of facts, and discovery will be complicated and time-consuming. To permit the newly re-cast claims for legal malpractice against Canadian attorneys to proceed would make the case exponentially more difficult to manage. Finally, the attorney defendants have already fought and won the personal jurisdictional battle, and it would be unfair to drag them back into court based on the Trustee's attempted "second bite at the apple."

### C. Motion to Strike

Lawson and MacKenzie move to strike all factual allegations concerning alleged legal malpractice.[9] The Trustee argues allegations of legal malpractice are relevant to the Attorney Defendants' duties as officers and directors and defendants improperly seek to expunge facts. [Dkt. #122 at 15]. He contends factual allegations do not have to support an independent basis for relief. [*Id.* at 15-16].

In its order, the Tenth Circuit distinguished between claims against BDP and Lawson in their capacity as officers and directors and claims against them in their capacity as attorneys. *Newsome*, 722 F.3d at 1279. It affirmed dismissal of the legal malpractice claims. And while it is generally true—as plaintiff asserts—that "a plaintiff is master of his complaint," his autonomy in this case is necessarily constricted by the appellate court's decision. The following allegations—which pertain to Lawson's and/or MacKenzie's alleged roles as attorneys and are

---

[9] Specifically, defendants ask the court to strike ¶¶13, 70-75, 95 and 173-202 of the First Amended Complaint.

not alleged against any of the non-attorney defendants—constitute separate core facts related solely to the legal malpractice claims: ¶13 reference to "attorneys;" ¶¶69-71; ¶¶73-75 to the extent they raise legal malpractice claims against MacKenzie; ¶95 statement that MacKenzie "also served as corporate counsel" to both Peregrine and Parent; ¶174 reference to "attorneys." Therefore, they are stricken.

## V. Conclusion

The Attorney Defendants' Motion to Dismiss [Dkt. #81] is granted as set forth above.[10]

ENTERED this 5th day of June, 2014.

_____
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[10] The court will address defendants' request for sanctions in its ruling on the separately filed Motion for Sanctions. [Dkt. #93].